IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SEAN TAPP, | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION |
|     v. | : | |
| | : | NO. 11-677 |
| DANNY BRAZILL, ET AL., | : | |
|     Defendants. | : | |

**MEMORANDUM**

**Tucker, J.**                                                    **December _____ , 2011**

      Presently before the Court is Defendants' motion to dismiss filed by PrimeCare Medial ("PrimeCare"), Keri Medina, Valeria Bradley, Lori Hostetter, and Dr. William Young (jointly the "Medical Defendants")[1] (Doc. 23) and Plaintiff's response in Opposition thereto (Doc. 25). Based upon the following analysis, the Defendants' motion is granted.

**FACTUAL BACKGROUND**

      Plaintiff Sean Tapp, a pro se prisoner, initiated this action against numerous Lancaster County Prison personnel raising federal constitutional claims and supplemental state law claims.[2] With regard to the Medical Defendants, Plaintiff sued the Defendants under 42 U.S.C. § 1983 alleging that he was subjected to cruel and unusual punishment in violation of his Eighth

---

[1]  Plaintiff misidentified the Defendants in his Complaint as follows: PrimeCare was misidentified as "Lancaster County Prison Medial Department"; Keri Medina was misidentified as "Nurse Carrie Medina"; Valerie Bradley was misidentified as "RN Val B Medical Staff"; Lori Hostetter was misidentified as "RN Laurie Hosteder"; and Dr. William Young was misidentified as "Dr. Yung." The Clerk of Court is directed to change the listed names in the caption of this action to their proper spelling.

[2]  In addition to the Medical Defendants, also named as Defendants are: Danny Brazill; Andy Proto; Lancaster County Prison; Sergeant Jacobs; Sergeant Wolfe; Correctional Officers Grier, Miller, Cannefield, Marin, Roder, Hersh, and B. Johnson; Warden Guardreeni; Robert Samasko; and Lancaster County.

Amendment rights because he was denied adequate medical care.[3]  Plaintiff also asserts claims

under 42 U.S.C. § 1985 alleging that he was deprived of certain rights and privileges afforded to

other inmates.  Plaintiff's specific claims as to each Medical Defendant are as follows: (1)

Plaintiff asserts claims under 42 U.S.C. § 1985 against Nurse Keri Medina and Nurse Lori

Hostetter alleging that Defendants purposely misdiagnosed him with MRSA as part of a

conspiracy to have him "jumped and sent to solitary confinement" to prevent him from accessing

the "law library and litigating his criminal and civil case pro se" (Compl. ¶¶ 6-9);  Plaintiff's

remaining claims are under 42 U.S.C. § 1983 in which he claims (2) Defendants Medina and

Hostetter "intentionally, falsely, misdiagnosed" him with MRSA; (3) Valeria Bradley was

notified that he was not receiving his MRSA medication and failed to personally resolve the

issue; (4) Dr. Young required him to sign a form before providing him with medical treatment;

and (5) PrimeCare created "a custom and policy of putting money first . . . by hiring non

qualified individuals . . . as well as no frill over the counter drugs instead of p[re]scribed

medication [and] misdiagnosis." (Compl. ¶¶ 5, 11-14; Pl.'s Resp. ¶¶ 6-8).

      In response, Medical Defendants argue that (1) Plaintiff's complaint failed to state a

claim under 42 U.S.C. §1983; (2) Plaintiff incorrectly asserted a private right of action under

---

[3] Title 42 U.S.C. § 1983 provides in relevant part:

    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any

    State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of
    the United States or other person within the jurisdiction thereof to the deprivation of any rights,
    privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured
    in an action at law, suit in equity, or other proper proceeding for redress.

HIPPA; and (3) should this Court dismiss Plaintiff's §1983 claims, any remaining state law claims should similarly be dismissed because considerations of judicial economy, convenience, and or fairness do not warrant the exercise of this Court's supplemental jurisdiction. (Doc. 24).

## LEGAL STANDARD FOR MOTION TO DISMISS

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly et.al., 550 U.S. 544, 555 (2007). In Twombly the Court made clear that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face." Id. at 570. A "pleader is required to 'set forth

sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'"  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted).

In 2009 the United States Supreme Court revisited the requirements for surviving a 12(b)(6) motion to dismiss in Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).  In Iqbal, the Court made clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements [are] not suffic[ient]" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 1949. "[O]nly a complaint that states a plausible claim for relief [will] survive[] a motion to dismiss." Id. at1950.

In light of the decision in Iqbal, the Third Circuit set forth a two-part analysis to be applied by district courts when presented with a 12(b)(6) motion.  First, the court must separate the legal elements and factual allegations of the claim, with the well-pleaded facts accepted as true but the legal conclusions disregarded.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 0(3d Cir. 2009).  Second, the court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." Id. at 211.  If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged -- but has failed to show -- that the pleader is entitled to relief. Id.

## DISCUSSION

The Court notes that documents filed pro se are to be liberally construed and must be held to a less stringent standard than formal pleadings drafted by lawyers.  Erickson v. Pardus, 551

U.S. 89, 127 S.Ct. 2197, 2200 (2007).  However, even applying these liberal standards, the Court

finds that Plaintiff has failed to sufficiently allege a plausible claim for relief.

**I.      Plaintiff's Claim For Deprivation of Medical Care under 42 U.S.C. § 1983**

        Plaintiff claims that Medical Defendants failed to provide him with adequate medical care

in violation of his Eighth Amendment rights.  In <u>Estelle v. Gamble</u>, 429 U.S. 97, 97 S.Ct. 285, 50

L.Ed. 251 (1976), the Supreme Court held that the Eighth Amendment's prohibition against cruel

and usual punishment requires prison officials to provide basic medical treatment for those

whom it has incarcerated.  The Court, however, cautioned that not "every claim by a prisoner that

he has not received adequate medical treatment" states a violation; only where the failure of

adequate medical care results from the prison official's deliberate indifference to a prisoner's

serious medical needs will such indifference result in the  "unnecessary and wanton infliction of

pain" as proscribed by the Eighth Amendment.  <u>Id</u> at 105; <u>see</u> <u>also</u> <u>Gresh v. Berks Co.</u>, et. al., No.

CIV.A.00-5697,  2002 WL 1635394, at *4 (E.D.Pa. 2002) (citation omitted) (stating that

[p]risoners are not entitled to the best medical care available; they are merely guaranteed that

their doctors will not be deliberately indifferent to their needs").   Therefore, to establish a

cognizable claim for unconstitutional deprivation of medical care, a prisoner must demonstrate

(1) that his medical needs were serious and (2) that prison officials were deliberately indifferent

to those serious medical needs.  <u>See</u> <u>id</u>.

        A serious medical need is "one that has been diagnosed by a physician as requiring

treatment or one that is so obvious that a lay person would easily recognize the necessity for a

doctor's attention."  Reynolds v. Wagner, 936 F.Supp. 1216, 1224 (E.D.Pa.,1996) (citations

omitted).  The seriousness of an inmate's medical needs may also be accessed where denial or delay of medical treatment "cause[d] an inmate to suffer life-long handicap or permanent loss." Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.1987), *cert. denied*, 486 U.S. 1006, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988) (citations omitted).

Deliberate indifference is more than inadvertent failure to provide adequate medical care and is "characterized by obduracy and wantonness."  Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 1084 (1986); see also Estelle, 429 U.S. at 105 (noting that "an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind').  Courts have consistently held that mere negligence and medical malpractice, without some more culpable state of mind, are insufficient to constitute deliberate indifference.  See Farmer v. Brennan, 511 U.S. 825, 837 (1994) (stating that a prison official will not be liable under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993) ("[T]he law is clear that simple medical malpractice is insufficient to present a constitutional violation").  Furthermore, the Court of Appeals for the Third Circuit has recognized that disagreements with a doctor's diagnosis does not establish deliberate indifference whether the disagreement is between that of the prisoner and attending doctor or between two doctors.  White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990); see also Gresh, 2002 WL 1635394, at *6 (noting that occasional missed doses of medication do not implicate the

Constitution).

The Third Circuit has found "deliberate indifference" in circumstances which include where prison officials (1) deny reasonable requests for medical treatment exposing the inmate to "undue suffering or the threat of tangible residual injury"; (2) knowingly and intentionally refuse to provide the inmate with necessary medical care; (3) erect arbitrary and burdensome procedures that result in intermediate delays and outright denials of medical care to suffering inmates; (4) opt for easier and less efficacious treatment of the inmate's condition; and (5) prevent an inmate from receiving recommended treatment of serious medical needs or deny access to a physician capable of evaluating the need for such treatment. See Durmer v. O'Carroll, 991 F.2d 64, 68 (3d. Cir. 1993) (citing Monmouth County, 834 F.2d 326 at 346-47).

In the instant case, Plaintiff's allegations establish neither a serious medical need nor deliberate indifference and thus fall short of establishing an entitlement to relief. The Court doubts Defendants would dispute that MRSA is a serious medical condition, however, it is unclear whether Plaintiff alleges that he in fact has MRSA. In the complaint, Plaintiff states that he was "purposely misdiagnosed" with MRSA by Nurse Hostetter and Nurse Medina. (Compl. ¶¶ 6, 9). Plaintiff then later seemingly admits that he has MRSA when he alleges that he was in pain after not receiving the proper medication for his condition. (Compl. ¶ 11). Without more information, the Court cannot determine whether Plaintiff has MRSA or some other illness which could be deemed a serious medical condition.

Plaintiff's allegations are also devoid of sufficient information to permit this Court to draw the inference that Defendants Medina, Hostteter, Bradley or Dr. Young were deliberately

indifferent to Plaintiff's medical needs.[4]   Plaintiff alleges that Nurse Medina and Hostteter

purposely misdiagnosed him with MRSA.  He alleges that Nurse Bradley was indifferent to his

medical condition because she was "put on notice that [he] was not receiving his antibiotic

medication for his MRSA problem" and she informed him that he should notify a correctional

officer of the issue.  (Compl. ¶ 11).  Plaintiff also alleges that Dr. Young violated his Eighth

Amendment rights because he required him to sign a form prior to receiving medical treatment,

although he admits that he was treated after signing the form.  In all instances, Plaintiff never

alleges that he was denied treatment.  Furthermore, Dr. Young's requirement to sign a medical

release is standard medical procedure.  Prison officials cannot be held responsible for delays in

medical treatment when such delay is due to the inmate's outright refusal to cooperate.

Therefore, in light of Plaintiffs allegations, he cannot prove a set of facts which will demonstrate

that Medical Defendants violated his constitutional right to adequate medical treatment.

Accordingly, the Court will grant the motion to dismiss.

II.      **Plaintiff's Claim Against PrimeCare under 42 U.S.C. § 1983**

        Defendant PrimeCare has moved to dismiss the complaint on the grounds that Plaintiff

improperly relied on the theory of respondeat superior and failed to show how a policy or

procedure of PrimeCare caused a constitutional violation.  PrimeCare is the corporate medical

provider of Lancaster County Prison.  As a corporate medical provider, Primecare cannot be held

responsible for the acts of its employees under a theory of respondeat superior or vicarious

---

[4] In support of Plaintiff's allegations against Kerrie Medina, Plaintiff stated that Defendant was
"deliberately indifferent to [his] health and safety by acting with a 'sufficiently culpable' state of mind . .
." but offers no other information in support of this statement.  Plaintiff also made similar legal
conclusions as to the remaining Medical Defendants." This Court is not "bound to accept as true legal
conclusions couched as factual allegations." Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.
Ed. 2d 209 (1986).

liability. See Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 403, 117

S.Ct. 1382, 1388 (1997)(holding that a municipality may not be held liable under § 1983 solely

because its employees are tortfeasors); see also Roach v. SCI Graterford Med. Dep't, 398 F. Supp

2d 379, 388 (E.D.Pa.2005) (holding that a private corporation, although it may be sued under §

1983 for actions taken under the color of state law that deprive the prisoner of adequate medical

care, may not be sued under the doctrine of respondeat superior).  Rather, liability will attach

only where Plaintiff can demonstrate that a PrimeCare policy or custom caused his alleged

constitutional violations. See Natale v. Camden County Correctional Facility, 318 F.3d 575, 583

-584 (3d Cir. 2003)(citing Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 691, 98

S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

      Not all state action rises to the level of a custom or policy.  A policy is made "when a

decisionmaker possess[ing] final authority to establish municipal policy with respect to the action

issues a final proclamation, policy or edict."  Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d

Cir.1996) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d

452 (1986) (plurality opinion)).  A custom is an act "that has not been formally approved by an

appropriate decisionmaker," but that is "so widespread as to have the force of law." Bryan

County, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

      Proof only of the existence of an unlawful policy or custom is not sufficient, however, to

impose liability.  Kneipp v. Tedder, 95 F.3d at 1212 (citing Bielevicz v. Dubinon, 915 F.2d 845,

850 (3d Cir.1990)).  A plaintiff must establish that the corporation's policy or custom was the

proximate cause of the alleged injury.  Id. (providing that causation is demonstrated where the

"plaintiff can show a 'plausible nexus' or 'affirmative link' between the municipality's custom

and the specific deprivation of constitutional rights at issue"). It must also be demonstrated that the corporation maintained such policy or custom with deliberate indifference to its consequences. See City of Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204 (1989).

In Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993), the Supreme Court recognized that allegations of a policy or practice are not subject to heightened pleading requirements and need only contain a short and plain statement of the claim in accordance with Federal Rules of Civil Procedure 8(a) (citing Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Notwithstanding this general principle, courts disagree as to (1) how clearly a complaint must describe the policy or custom and (2) the extent that the complaint must cite fact-based examples of the policy or practice. Robus v. Pennsylvania Dept. of Corrections No. CIV.A. 04-2175, 2006 WL 2060615, at * 6 (E.D. Pa. July 20, 2006) (citations omitted). In Robus, the court upheld the general principle that a complaint which describes discrete actions taken by prison employees without any ratiocination of how the instances relate to an official policy or practice are insufficient to establish corporate liability under section 1983. Id.

In the instant case, Plaintiff alleges that PrimeCare had a policy to deny him proper medical treatment. Plaintiff alleges that this purported deprivation resulted from PrimeCare's policy of "putting money first" and hiring non qualified individuals who prescribe "no frill over the counter drugs instead of p[re]scribed medication [and] misdiagnosis." Plaintiff has failed to allege any facts consistent with his allegations to allow the Court to draw an inference that he is entitled to relief. Furthermore, Plaintiff has not produced any evidence demonstrating how a PrimeCare policy caused harm to him. Therefore, the Court will dismiss the § 1983 claim

against PrimeCare.

### III.   Plaintiff's Claim Against Nurse Medina and Hostteder under 42 U.S.C. § 1985

The Court notes that although Defendants did not specifically address Plaintiff's claims under 42 U.S.C. § 1985 against Medina and Hostetter, the claims also fail as a matter of law since the allegations lack factual support.  Plaintiff alleges that Defendants purposely misdiagnosed him with MRSA as part of a conspiracy to have him "jumped and sent to solitary confinement" to prevent him from accessing the "law library and litigating his criminal and civil case pro se."  Title 42 U.S.C. § 1985(3) "Depriving persons of rights or privileges," provides in relevant part that:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Here, Plaintiff has failed to submit any facts in support of his allegations.  As such, the Court will dismiss Plaintiff's § 1985 claims since he has failed to show that he is entitled to relief.

### IV.   Plaintiff's State Law Claims

Plaintiff claims that the disclosure of his medical information to a correctional officer violated his rights under HIPAA.  Neither the U.S. Supreme Court nor the United States Court of

Appeals for the Third Circuit has specifically addressed the issue, however, other Pennsylvania district courts have all found that HIPAA does not create a private right of action. See Rigaud v. Garofalo, No. Civ.A.04-1866, 2005 WL 1030196, at * 3 (E.D. Pa. May 2, 2005); Dominic J. v. Wyoming Valley West High School, 362 F.Supp.2d 560, 574 (M.D.Pa.2005); Carney v. Snyder, No. C.A. 06-23, 2006 WL 2372007, at * 4 (W.D.Pa., August 15, 2006).  Consequently, the Court will dismiss the claim.

**V.**      **Plaintiff's State Law Claims**

The Third Circuit has stated that 128 U.S.C. § 1367(c)(3) permits a district court to "decline to exercise supplemental jurisdiction over a [state law] claim ... if [it] has dismissed all claims over which it has original jurisdiction ... and considerations of judicial economy, convenience, and fairness to the parties" does not require the action to be heard.  Boneberger v. Plymouth Tp., 132 F.3d 20, 23 (3d Cir. 1997)(citing Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir.1995)).  Here, no such considerations exist.  Therefore, since the Court will grant the motion to dismiss on all Plaintiff's federal claims, the Court will also decline to exercise supplemental jurisdiction over Plaintiff's state tort claims.

**VI.**      **CONCLUSION**

The Court will grant Defendants' motion with respect to all of Plaintiffs' federal claims. The Court will dismiss Plaintiff's HIPPA claim because there is no private right of action under HIPPA. The Court will also decline to exercise supplemental jurisdiction over Plaintiff's state law claims.  Accordingly, Plaintiff's complaint as it pertains to Defendants PrimeCare Medial,

Keri Medina, Valeria Bradley, Lori Hostetter, and Dr. William Young (jointly the "Medical Defendants") is dismissed.

      An appropriate Order follows.