**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SEAN TAPP,** | : | |
| | : | |
| **Plaintiff,** | : | |
| v. | : | **CIVIL ACTION** |
| | : | |
| | : | **NO. 11-677** |
| **DANNY BRAZILL et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |
| | : | |
| | : | |

**MEMORANDUM**

Tucker, C. J.                                                June ____, 2014

Currently before the Court is Defendants' Motion for Summary Judgment (Doc. 52),

Plaintiff's Cross-Motion for Summary Judgment (Doc. 53), and all responses thereto.  Upon

consideration of the parties' motions with briefs and exhibits, and for the reasons set forth below,

the Court will deny Plaintiff's Cross-Motion for Summary Judgment and grant Defendants'

Motion for Summary Judgment.

I.     FACTUAL BACKGROUND[1]

Because the Court writes primarily for the parties, the Court sets forth only those facts

that are relevant to its conclusion.  Sean Tapp ("Tapp"), a *pro se* prisoner currently incarcerated

at the State Correctional Institution at Huntingdon ("SCI Huntingdon"), has filed the instant

lawsuit against Defendants Danny Brazill, Corrections Officer ("C/O") Cannefield, C/O Grier,

---

[1]     Tapp has failed to submit a statement of undisputed facts with his motion.  The facts are therefore compiled
from the undisputed record in this case, including: Tapp's Complaint, Tapp's Response to Defendant's Motion for
Summary Judgment, a transcript of Tapp's February 2012 deposition, a transcript of Tapp's 2009 trial in the
Lancaster County Court of Common Pleas, documents filed on record in Tapp's previous civil trial (*Tapp v.
Proto, et al.*, Civil Case No. 07-CV-3725), and exhibits submitted by the parties.

Warden Vincent Guarini[2], C/O Marin, C/O Hersh, Sergeant Jacobs, C/O B. Johnson, C/O Miller, C/O Roder, Robert Samasko, Sergeant Wolffe, and Lancaster County Prison ("LCP") (collectively "Defendants") seeking redress for numerous constitutional violations he allegedly suffered while imprisoned at LCP in 2009.  Specifically, Tapp asserts claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 for alleged violations of his rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the constitution.  Tapp also alleges Defendants generally discriminated, conspired, and retaliated against him.

Tapp has previously litigated almost identical claims arising from his previous imprisonment at LCP in 2006 and 2007. *Tapp v. Proto et al.*, 718 F. Supp.2d 598 (E.D.Pa. 2010) (granting defendants' motion for summary judgment and dismissing Tapp's claims in their entirety) *aff'd,* 404 Fed.Appx. 563 (3d Cir. 2010).  Unique to Tapp's current claims are allegations that Defendants denied him access to the courts and retaliated against him because Tapp filed the above-mentioned civil suit against LCP employees and administrators. (Compl. ¶ 10.)

In late 2006 Tapp was arrested in Lancaster, Pennsylvania and charged with possession with intent to deliver cocaine. (Defs.' Mot. for Summ. J. at Ex. D at 4-5.)  After his arrest, Tapp was housed at LCP as a pre-trial detainee.  During his initial stay at LCP, Tapp repeatedly lodged complaints concerning his kosher meals and incidents of alleged mistreatment by prison guards. Ultimately, Tapp filed a civil rights lawsuit against various employees and administrators at LCP, alleging they violated his constitutional rights while he was imprisoned there. (*Tapp v. Proto et al.*, Civil Case No. 07-CV-3725, Compl., Nov. 30, 2007, ECF No. 6.)

On June 6, 2007, after a jury trial, Tapp was found guilty of possession with intent to deliver in the Lancaster County Court of Common Pleas and later incarcerated at SCI

---

[2]    Tapp misspells Vincent "Guarini" as "Guardreeni" in his Complaint.

Huntingdon. (Defs.' Mot. for Summ. J. at Ex. D at 4-5.)  While incarcerated at SCI Huntingdon, Tapp was able to appeal his criminal conviction and litigate his civil claim against LCP.  Tapp's criminal appeal was ultimately successful and the Superior Court of Pennsylvania granted Tapp a new trial.  In anticipation of his retrial, Tapp was relocated from SCI Huntingdon to LCP on January 26, 2009.  The instant claims arise from Tapp's time at LCP after this date.

A.      **First Amendment Claims**

Tapp claims that Defendants confiscated his legal papers, opened and withheld his legal mail, and generally caused him to lose his 2009 criminal retrial and 2007 civil suit, all in violation of his rights under the First Amendment. (Compl. ¶¶ 1, 3-4, 7, 9-10, and 17.)  Tapp alleges these problems began immediately upon his readmission to LCP in January of 2009. (*Id.* at ¶ 1.)  During his readmission to LCP, Tapp asserts that Defendants Roder and Hersh confiscated his legal paperwork and denied him the ability to have the paperwork in his cell. (*Id.* at ¶ 3.)  Tapp maintains that Roder and Hersh did this because Robert Samasko, a defendant in Tapp's first civil suit against LCP, instructed them to do so. (*Id.* at ¶ 3.)  Tapp's legal papers were then stored with a prison counselor, Defendant Danny Brazill ("Brazill"), who routinely sought out Tapp to see if he was interested in accessing his documents. (*Id.* at ¶ 4.)

The record demonstrates Tapp was ultimately permitted to retain a portion of his paperwork in his cell. (Pl.'s Resp. to Defs.' Mot. Summ. J. at Ex. 6.)  Tapp was repeatedly informed that the reason he was not able to retain all of his documents was due to the sheer volume of paperwork he possessed. (*Id.* at Ex. 24, 31, and 32.)  Upon request, however, Tapp could exchange documents in his cell for documents stored with Brazill. (*Id.*)  Tapp continued to receive large amounts of legal paperwork relating to his ongoing litigation through the mail. (*Id.*)  This mail was stored with Tapp's other paperwork in Brazill's office. (*Id.*)  Tapp presents

evidence of a single instance in which Defendants opened Tapp's legal mail. (Tapp Dep. 75:2-76:1; Defs.' Mot. Summ. J. at Ex. B-Part 3 at 78.)  Aside from this, Defendants informed Tapp on a number of occasions that he had received legal mail and could obtain it through Brazill. (Pl.'s Resp. to Defs.' Mot. Summ. J. at Ex. 24, 31, and 32.)

Completely dissatisfied with Defendants system of paper exchanges, Tapp regularly complained about his inability to access all of his legal documents. (*Id.* at 21, 29, and 25.)  These complaints were not limited to written complaints to Defendants.  To the contrary, Tapp made complaints to the judge in both his criminal and civil trials.  (*Commonwealth of Pennsylvania v. Tapp, Court of Common Pleas of Lancaster County*, Criminal Trial Division, Criminal No. 81-2007, Transcript of Record at 11:1-13:16, July 9, 2009, ECF No. 52-8; *Tapp v. Proto et al.*, Civil Case No. 07-CV-03725, Order Granting Pl.'s Req. for Appointment of Counsel at 2, May 12, 2009, ECF No. 49).

Tapp informed the court in his civil case that he had returned to LCP and that he was being deprived of access to his legal work. (*Tapp v. Proto et al.*, Civil Case No. 07-CV-3725, Notice of Change of Address, Feb. 4, 2009, ECF No. 40.)  In response to Tapp's message, the court stayed the deadlines for dispositive motions in Tapp's case and attempted to appoint a civil attorney to represent Tapp. (*Tapp v. Proto et al.*, Civil Case No. 07-CV-3725, Order Granting Appointment of Counsel, May 12, 2009, ECF No. 49.)  Though the court was ultimately unable to secure a civil attorney to represent Tapp, he was allowed time to respond to the defendants' dispositive motions *pro se*. (*Tapp v. Proto et al.*, Civil Case No. 07-CV-3725, Order Vacating Appointment of Counsel, Sept. 3, 2009, ECF No. 53.)  Tapp's responses were unfruitful, however, and the court ultimately granted summary judgment in favor of the defendants.  Tapp similarly raised concerns about his ability to access his legal paperwork to the judge presiding

4

over his criminal retrial in Lancaster County.  There, the court ensured Tapp was given copies of

all documents Tapp requested, a compromise Tapp found acceptable at the time.

(*Commonwealth of Pennsylvania v. Tapp, Court of Common Pleas of Lancaster County,*

Criminal Trial Division, Criminal No. 81-2007, Transcript of Record at 11:1-13:16, July 9, 2009,

ECF No. 52-8.)  Upon the event of his criminal retrial in 2009, for which he defended himself,

Tapp was ultimately again found guilty of possession with intent to deliver. (*Id.* at 3-10; Defs.'

Mot. for Summ. J. at Ex. D at 4-5.)

### B.      Conditions of Confinement

Tapp has claimed that the conditions at LCP routinely violated his constitutional rights as

a pre-trial detainee.  (Compl. ¶ 15.)  Tapp complains that he was required to shower in handcuffs

while housed in solitary confinement. (*Id.* at ¶ 15.)   Tapp claims that LCP officials refused him

at least one hour of recreation every twenty-four hours. (*Id.*)  Tapp also alleges he was forced to

wear used clothes and undergarments issued by LCP to inmates. (*Id.* at ¶ 8.)  Finally, Tapp

asserts that he was labeled publicly by the Defendants as having a communicable disease:

Methicillin-resistant Staphylococcus Aureus ("MRSA"). (*Id*. at ¶ 5-6.)

### C.      Retaliation and Conspiracy

Tapp alleges that Defendants conspired with each other to deprive him of his civil rights

in retaliation for Tapp's 2007 civil lawsuit against their co-workers. (Compl. ¶¶ 1, 3-4, 7, 10, and

17.)  Among the conspiracies alleged by Tapp are contentions that Samasko conspired with

Hersh, Roder, and Brazill because Samasko was sued by Tapp in the first lawsuit; that LCP

officials conspired to break Tapp down mentally and physically in an attempt to cause Tapp to

accept a plea deal and leave LCP; and that Defendant Johnson conspired with LCP officials and

the Lancaster Court of Common Pleas to be a juror in Tapp's original 2007 criminal trial in

retaliation for Tapp's lawsuit. (*Id.*; Tapp Dep. 60:21–61:13.)

## II.   RELEVANT PROCEDURAL HISTORY

Tapp's Complaint was filed on January 31, 2011.  (Doc. 1.)  Defendants filed their

Answer on May 12, 2011.  (Doc. 19.)  On July 11, 2011 Tapp moved for summary judgment

pursuant to Fed. R. Civ. P. 56.  (Doc. 25.)  Defendants opposed Tapp's motion as premature.

(Doc. 31.)  The Court subsequently denied Tapp's initial summary judgment motion on August

31, 2011.  (Doc. 36.)  After deposing Tapp on February 16, 2012, Defendants filed the instant

Motion for Summary Judgment on December 13, 2012.  (Doc. 52.)  Tapp opposed Defendants'

motion and filed a Cross-Motion for Summary Judgment on January 10, 2013.  (Doc. 53.)

## III.   LEGAL STANDARD

Summary judgment is awarded only when "there is no genuine issue as to any material

fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a);

*Liberty Mut. Ins. Co. v. Sweeney,* 689 F.3d 288, 292 (3d Cir. 2012).  A factual dispute between

the parties will not defeat a motion for summary judgment unless it is both genuine and material.

*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986); *Dee v. Borough of Dunmore,*

549 F.3d 225, 229 (3d Cir. 2008).  A factual dispute is genuine if a reasonable jury could return a

verdict for the non-movant, and it is material if, under the substantive law, it would affect the

outcome of the suit. *See Anderson*, 477 U.S. at 248; *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d

Cir. 2002).

The moving party must show that if the evidentiary material of record were

reduced to admissible evidence in court, it would be insufficient to permit the non-moving party

to carry its burden of proof. *See Celotex v. Catrett*, 477 U.S. 317, 327 (1986).  Once the moving

party has carried its burden under Rule 56, "its' opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Under Fed. R. Civ. P. 56(e), the opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *See Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249 (citations omitted); *Jiminez v. All American Rathskeller, Inc.,* 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Communications, Inc.*, 258 F.3d 132 (3d Cir. 2001). The court must award summary judgment on all claims unless the non-moving party shows through affidavits or admissible evidence that an issue of material fact remains. *See, e.g., Love v. Rancocas Hosp.*, 270 F.Supp.2d 576, 579 (D.N.J. 2003); *Koch Materials Co. v. Shore Slurry Seal, Inc.*, 205 F.Supp.2d 324, 330 (D.N.J. 2002).

*Pro se* litigants are entitled to have the court liberally construe their pleadings, even at summary judgment. *Benckini v. Hawk*, 654 F. Supp. 2d 310, 316 at n.1 (E.D.Pa. 2009). The court may also treat the factual averments contained within verified pleadings of a *pro se* party as affidavits for the purpose of summary judgment. *Simpson v. Horn*, 25 F. Supp. 2d 563, 574 at n.3 (E.D.Pa. 1998) (citing *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985)). Though a court can accept the factual averments in these pleadings, it is under no obligation to do so if other sworn statements of the *pro se* party are contradictory. *Simpson*, 25 F. Supp. 2d at 566 (citing

7

*Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir. 1991); *Martin v. Merrell Dow Pharmaceuticals*, 851 F.2d 703, 706 (3d Cir. 1988)).

## IV.   DISCUSSION

Plaintiffs alleging a cause of action under 42 U.S.C. § 1983 are required to demonstrate two elements: (1) defendants acted under color of state law; and (2) while acting under color of state law, defendants deprived the plaintiff of his or her rights secured by the constitution or the laws of the United States. *Galena v. Leone*, 638 F.3d 186, 196-97 (3d Cir. 2011) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).   Here, the state action requirement is not in dispute, as all Defendants acted by and through Lancaster County, a municipality within the Commonwealth of Pennsylvania. (Defs.' Mot. for Summ. J. at 3.) Accordingly, the Court must examine whether or not Defendants deprived Tapp of his rights under the constitution or the laws of the United States of America. *Galena v. Leone*, 638 F.3d at 196-97.   Because the Court finds Tapp has not adduced sufficient evidence in support of any of his constitutional claims, the Court will grant summary judgment in Defendants' favor and dismiss Tapp's constitutional claims.

### A.   The First Amendment

***Tapp's Access to Courts Claim***

Tapp has alleged that Defendants infringed upon his First Amendment right to access the courts.[3]  (Compl. ¶¶ 1, 3-4, 7, 9-10, and 17.)  Specifically, Tapp claims that Defendants conspired to restrict access to his legal paperwork in an effort to prevent him from properly litigating his 2009 criminal retrial in the Lancaster Court of Common Pleas in front of Judge Dennis Reinaker and his 2007 civil suit in the Eastern District of Pennsylvania before Judge

---

[3]     It is well established that prisoners do not forfeit their right to access the courts upon imprisonment. *Lewis*, 518 U.S. at 346; *Monroe*, 536 F.3d at 205; *see also Prater*, 542 Fed.Appx. at 137 (citing *McBride*, 240 F.3d at 1290) (applying same to pretrial detainees).  Included in a prisoner's right to access the courts is the right to prepare legal documents without interference from prison officials. *Lewis*, 518 U.S. at 350.

Anita Brody.  Other than Tapp's own contradictory[4] allegations, there is no record evidence

showing Tapp's efforts to litigate his criminal and civil cases were frustrated as a result of

Defendants' actions.  For that reason, the Court will grant Defendants' motion for summary

judgment as to Tapp's access to courts claims against Defendants.

      Prisoners alleging that their right to access the courts has been impeded are required to

demonstrate two elements: (1) the prisoner suffered an actual injury; and (2) the prisoner has no

remedy, aside from the filing of a civil rights suit, to compensate for the lost claim. *Schreane v.*

*Holt*, 482 Fed.Appx. 674, 676 (3d Cir. 2012) (citing *Monroe v. Beard*, 536 F.3d 198, 205 (3d

Cir. 2008)); *also see Prater v. City of Philadelphia*, 542 Fed.Appx. 135, 137 (3d Cir. Oct. 8,

2013) (citing *McBride v Deer*, 240 F.3d 1287, 1290 (10th Cir. 2001) (requiring a pretrial

detainee making a claim based on a denial of access to the courts to show actual injury).  In this

context, actual injury is demonstrated by the "loss or rejection of a legal claim," caused by

defendant's actions.  *Oliver v. Fauver*, 118 F.3d 175, 177-78 (3d Cir. 1997).  Actual injury

requires more than the frustration of any legal claim – the claim must be nonfrivolous.

*Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *see also Lewis v. Casey*, 518 U.S. 343, 353

n.3 (1996) ("Depriving someone of a frivolous claim . . . deprives him of nothing at all, except

perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.").

---

[4]    The meat of Tapp's access to the courts claim arises from his allegations that Defendants deprived him of *all* his legal documents and legal mail in an effort to ensure the loss of his criminal and civil cases.  However, Tapp contradicts this allegation at several points throughout his verified pleadings and sworn deposition.

    One prime example is Tapp's allegation that Defendants replaced his normal cellmate with a "dope fiend" on the eve of trial.  Though Tapp uses this as an example of Defendants' retaliatory actions, Tapp's deposition testimony undercuts his claim that he was deprived of *all* legal documents.  When asked what potential witness Sergeant Showalter would testify to, Tapp responded that Showalter was witness to an incident "when they had put the dope fiend in my cell the night before I started traveling, I ended up going in the hole because this man was taking all of my property, taking my legal mail, my personal property." (Tapp Dep. 104:22-105:2).

Initially, the Court notes the abundance of evidence demonstrating Defendant did not prohibit Tapp from reviewing his legal materials while at LCP.  As Judge Brody expressly noted in her June 11, 2010 opinion denying Tapp's Motion for Reconsideration in his civil case:

> Tapp filed two collections of exhibits in support of his Motion [for Reconsideration]. . . . In the first collection of exhibits, Tapp encloses a letter from Dan Brazill, Senior Counselor at Lancaster County Prison, in which Mr. Brazill writes:
>
>> Sean Tapp's legal material was made available to him at any time he wanted it. Mr. Tapp declined these materials repeatedly. So as not to impinge on his access to the courts, this writer asked Mr. Tapp a minimum of twice a week if it [sic] wanted any of these materials and I have documented those occasions. When Mr. Tapp's [sic] went to court in Lancaster County Court of Common Pleas, he requested and was provided by me, from this material, three manila envelopes as identified by him, which he was committed with when he was received from the State Prison System. Mr. Tapp was allowed to keep the three manila envelopes that he had retrieved and never returned those to me. All other paperwork that had been offered to him throughout his incarceration and which he refused was sealed and sent with him back to the State Prison system. All these materials were kept by myself only, from receipt until his transfer.
>
> This letter, which Tapp does not refute, significantly damages Tapp's claim that the defendants in this matter denied him his legal papers to prevent him from litigating this matter.

*Tapp v. Proto*, 2010 WL 2470840, at *1 n.2 (E.D.Pa. June 15, 2010) *aff'd*, 404 Fed.Appx.563 (3d Cir. 2010); *see also Tapp v. Proto*, 404 Fed.Appx. 563, 568 n.3 (3d Cir. 2010) ("While Tapp argued that he was deprived of his legal papers, the documentary evidence and Tapp's own statements in his filings and deposition refute this contention.").

During discovery in the instant matter, Tapp produced numerous examples of written correspondence from Brazill to Tapp.  Each letter from Brazill informed Tapp of the location of his legal work, Tapp's ability to access and review his legal work in private, as well as the reason

that only a certain portion of Tapp's work was permitted in his cell at a time.[5]  Tapp admits he

received Brazill's correspondence on multiple occasions.[6]  (Tapp Dep. 85:16-86:15.)  Because

Defendants provided Tapp with access to his documents upon request,[7] Tapp's claim can only be

successful if he demonstrates that Defendants' limitations on access to his documents were the

cause of his actual injury.[8]  *See McNeil-El v. Diguglielmo*, 271 Fed.Appx. 283, 285 (3d Cir.

2008) (citing *Lewis*, 518 U.S. at 350-52); *see also Brathwaite v. Klein*, Civ Action No. 10-646-

GMS, 2013 WL 5397308, at *2 (D.Del. Sept. 25, 2013) (prisoner required to demonstrate that

prison regulation limiting the amount of legal documents in a cell was the cause of an actual

injury to his claims.).

---

[5]   Tapp produced three of these notices in his Cross-Motion for Summary Judgment.  Each notice stated:

> I, Sean Tapp, have been informed that the legal paperwork from Attorney Chris Munion was received by Lancaster County Prison.  And due to the volume of paperwork, I am not allowed to keep all of it in my cell at one time.  I have been afforded the ability to access and review this legal paperwork through Mr. Danny Brazill of the Counselor's staff who will keep it separate and confidential.  I also understand that I may review this information in private by submitting a request to Counselor Brazill.

(Pl.'s Resp. to Defs.' Mot. Summ. J. at Ex. 24, 31, and 32.)  The notices are dated February 12th, 17th, and 23rd, 2009. (*Id.*)

[6]   Tapp also filed a report with the "Deputy/Treatment" Department dated February 24, 2009 complaining of Brazill's actions.  The report stated:

> "GRIEVANCE"
>
> Early this morning Mr. Dan Brazil [sic] woke me up & told me that he has my legal mail in his office.
>
> Then he asked me was [sic] I going to sign for it saying I received it.  I replied no & went back to sleep.

(Pl.'s Resp. to Defs.' Mot. Summ. J. at Ex. 30.)

[7]   Tapp was permitted to take approximately "six inches" worth of legal material with him to his cell at any one time, with the ability to exchange materials upon request to Brazill.  (Pl.'s Resp. to Defs.' Mot. Summ. J. at Ex. 6 at ¶ 3.)  Tapp's statements during his 2009 retrial confirm that he retained possession of some of his documents, but not all. (*Commonwealth of Pennsylvania v. Tapp, Court of Common Pleas of Lancaster County*, Criminal Trial Division, Criminal No. 81-2007, Transcript of Record at 11:7-12:9, July 9, 2009, ECF No. 52-8.) For example, Tapp brought a transcript of his original criminal trial to court on July 9, 2009. (Id.)

[8]   As Tapp himself alleges, "By Defendants . . . not allowing Plaintiff to take his active pending legal work with him to his cell. [sic] This deprived plaintiff of the right to file legal papers and to seek and meet with lawyer and legal workers." (Pl.'s Resp. to Defs.' Mot. Summ. J. at 8.)

11

Here, Tapp has failed to introduce evidence sufficient to show the Defendants' regulation of the amount of paperwork Tapp was able to possess in his cell at a time caused the loss or rejection of any legal claim.  To the contrary, any harm suffered by Tapp was caused by his voluntary refusal to exchange the legal documents in his cell for those held in Brazill's office. As such, Tapp has failed to show that it was Defendant's conduct that caused the "specific deprivation of constitutional rights at issue." *Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000) (quotation marks omitted).

      a)      <u>Tapp's 2009 Criminal Retrial</u>

Tapp first asserts Defendants' actions caused him to lose his 2009 criminal retrial in Lancaster County for possession with intent to deliver. (Pl.'s Resp. to Defs.' Mot. Summ. J. at 8.) During this retrial, Tapp asserts Defendants withheld his trial exhibits, strategy notes, and legal research. (Tapp Dep. 23:25–29:4.)  Tapp also asserts Defendants prevented him from filing a motion he previously prepared to challenge the racial makeup of his jury. (*Id.* at 25:3–26:3.) Finally, Tapp alleges that, while he was provided with some documents during his criminal retrial, he did not have everything he needed to properly defend himself. (*Id.* at 21:16-22:20.) Absent the Defendants' actions, Tapp asserts he would not have lost his 2009 retrial.

This is not the first time Tapp has raised these issues.  Tapp presented identical complaints during his 2009 retrial before Judge Reinaker in Lancaster County. (*Commonwealth of Pennsylvania v. Tapp, Court of Common Pleas of Lancaster County*, Criminal Trial Division, Criminal No. 81-2007, Transcript of Record at 11:7-13:19, July 9, 2009, ECF No. 52-8.)  Despite Tapp's current assertions, the transcript from this trial shows that Tapp himself stated that he had all the documents he required to represent himself before the start of his trial. (*Id.* at 11:1-17:24.)

Before beginning jury selection in the 2009 retrial, Judge Reinaker asked Tapp if he was prepared to proceed to trial as a *pro se* defendant.  (*Id.* at 3:3-11:3.)  At that time, Tapp told Judge Reinaker that he had been without his legal property since his transfer to LCP.  (*Id.* at 11:7-11:15.)  Though Tapp stated that LCP was withholding the documents "I need for my defense to help prepare myself[,]" Tapp immediately followed that statement by telling Judge Reinaker, "I don't need [my documents] today." (*Id.* at 11:13-11:19.)  Concerned that the trial might not last more than a day, Judge Reinaker had the Assistant District Attorney and Tapp's standby counsel provide Tapp with copies of any documents he requested.  (*Id.* at 11:22-13:14.)

After agreeing on the documents Tapp required for trial, Judge Reinaker made absolutely sure Tapp was satisfied with the court's chosen remedy, and that the remedy adequately addressed the issue Tapp raised:

| | |
|---|---|
| [Judge Reinaker]: | Does that suffice? |
| [Tapp]: | That suffice [sic].[9] |
| [Judge Reinaker]: | Is there anything else that you have out there? |
| [Tapp]: | That's it. |

(*Id.* at 13:15-13:19.)

---

[9]  Despite his apparent satisfaction with the remedy crafted by the court, Tapp raised a related issue to Judge Reinaker immediately prior to Jury Selection.  Tapp requested the ability to review his notes and the legal documents the court provided him while in the holding area at the courthouse during any break in the trial. (*Commonwealth of Pennsylvania v. Tapp, Court of Common Pleas of Lancaster County*, Criminal Trial Division, Criminal No. 81-2007, Transcript of Record at 15:15-15:18, July 9, 2009, ECF No. 52-8.)  A deputy sheriff in Judge Reinaker's courtroom notified the court that prisoners were not permitted to take any notes or legal papers with them into the holding area as part of the courthouse's standard procedures.  (*Id.* at 15:21-15:24.)  Again, Judge Reinaker crafted a compromise acceptable to Tapp at the time: Tapp would be brought into the courtroom early and be given a reasonable amount of time to review his notes and legal documents prior to the trial resuming.  (*Id.* 15:25-16:17.)  Tapp has not sued the Lancaster County Sheriff's Department, nor does this issue in any way bear on the actions of Defendants.  The Court merely references Tapp's complaints in an effort to show Tapp's complete satisfaction with Judge Reinaker's efforts to ensure a fair trial for Tapp.

Tapp received his copies prior to jury selection.  After Tapp received his copies Judge Reinaker ensured Tapp continued to be satisfied with the court's chosen remedy as well as the completeness of the documents given to Tapp:

> [Judge Reinaker]:     Now, do you want to look briefly through that information to see if that's what you were requesting be brought down for you from the prison.  Is that what you're looking for?
>
> [Tapp]:     This is it, Your Honor.
>
> [Judge Reinaker]:     That's what you were looking for?
>
> [Tapp]:     Yeah.
>
> [Judge Reinaker]:     That's everything that you need?
>
> [Tapp]:     Everything should be here.
>
> [Judge Reinaker]:     So we're all set to proceed at this point?
>
> [Tapp]:     Yes.

(Id. at 17:13-17:24.)  Tapp did not raise the issue again throughout the remainder of his trial.

Tapp's current allegations ring hollow when compared with the clear and definite statements Tapp made during the course of his 2009 criminal retrial.  When Tapp's liberty and freedom were actually at stake during his trial, Tapp repeatedly affirmed that Judge Reinaker provided Tapp with everything he needed.  Only after Tapp was found guilty at trial, and subsequently filed this lawsuit against Defendants, did Tapp begin to allege Defendants' actions harmed his ability to represent himself in his criminal trial.

        b)     <u>Tapp's 2007 Civil Trial</u>

Tapp also claims Defendants' actions prevented him from adequately litigating the 2007 civil suit he filed against LCP and prison officials before Judge Brody of the Eastern District of Pennsylvania. (Pl.'s Resp. to Defs.' Mot. Summ. J. at 9.)  Again, even ignoring the

overwhelming evidence that Tapp had access to his documents while at LCP, the objective facts

of Tapp's civil litigation reveal no evidence that Tapp was in any way injured by Defendants'

actions.  For these reasons summary judgment in favor of Defendants in this case is appropriate.

Upon review of the docket in Tapp's 2007 civil case, the Court immediately notes the

lack of docket movement during the period of Tapp's imprisonment at LCP.  In this matter, Tapp

was imprisoned at LCP between January 26, 2009 and August 9, 2009.  (Tapp Dep. 29:15-

29:24.)  Though Judge Brody had previously set a February 16, 2009 deadline to file dispositive

motions, and a trial pool date of March 23, 2009, Judge Brody made no rulings on dispositive

motions filed by the litigants, and no trial occurred in March 2009. (*See Tapp v. Proto et al.*,

Civil Case No. 07-CV-3725, ECF Nos. 36–48.)  To the contrary, upon receipt of a letter[10] and

motion[11] from Tapp, Judge Brody stayed all proceedings in Tapp's civil case pending

---

[10]   Tapp's letter, in pertinent part, states:

> Dear M'am,
>
> PLEASE TAKE NOTICE & be duly advised that my criminal conviction was vacated along with my sentence.
>
> Now I'm back in LANCASTER COUNTY PRISON & since my arrival 1-26-09 I have been denied my Property, legal work, legal mail, Access to the courts, & the right to finish representing myself pro se.
>
> Before Plaintiff filed for temporary injunctive relief and a Temporary Restraining order which Plaintiff agreed with the court that this was now moot being he was out of harms [sic] way at S.C.I. Camp Hill.
>
> Since Plaintiff is now back in harms [sic] way Plaintiff seeks reinstatement of his temporary injunctive relief & temporary restraining order.
>
> […]
>
> Respectfully Submitted,
> Sean Tapp

(*Tapp v. Proto et al.*, Civil Case No. 07-CV-03725, Order Granting Pl.'s Req. for Appointment of Counsel at 2, May 12, 2009, ECF No. 49.)

[11]   Tapp's Motion for Appointment of Counsel, states, in pertinent part:

> Plaintiff moves on the grounds that he can no longer proceed pro-se with Lancaster county defendants denying him his property, legal mail, legal work, Access to the courts & the right to represent himself.

appointment of counsel to Tapp. (*Tapp v. Proto et al.*, Civil Case No. 07-CV-03725, Order Placing Matter in Civil Suspense, July 6, 2009, ECF. No. 51.)  Tapp's letter and motion alerted the court to the alleged seizure of Tapp's legal work.

Judge Brody's September 3, 2009 order to move forward with the case was entered just days after Tapp notified the court he was no longer housed at LCP, having just moved to SCI Huntingdon.  (*Tapp v. Proto et al.*, Civil Case No. 07-CV-03725, Notice of Change of Address, Aug. 27, 2009, ECF No.52.)  This order granted Tapp a period of 30 days to respond to the outstanding dispositive motions, which Tapp did so 50 days later on October 23, 2009. (*Tapp v. Proto et al.*, Civil Case No. 07-CV-03725, Cross-Mot. for Summ. J. and Opp'n to Defs.' Mot. for Summ. J., Oct. 23, 2009, ECF No. 56.)  Despite this renewed activity, the case remained in civil suspense until December 11, 2009. (*Tapp v. Proto et al.*, Civil Case No. 07-CV-03725, Order Removing Case from Civil Suspense, Dec. 11, 2009, ECF No. 58.)  Finally, Judge Brody did not rule on the outstanding dispositive motions until May 12, 2010. (*Tapp v. Proto et al.*, Civil Case No. 07-CV-03725, Order Granting Defs.' Mot. for Summ. J., May 13, 20010, ECF No. 65.)

The lack of movement in Tapp's civil case during this period is significant in light of the fact that Tapp stored copies of all his legal papers at SCI Huntingdon.  (Tapp Dep. 44:4-45:4; 73:12-74:9.)  At his deposition, Tapp identified a packet of exhibits produced by Defendants' attorney as being the documents he needed to litigate his civil claims while at LCP.  However, as

---

Plaintiff know [sic] that he don't have to be given a lawyer but he asks in the interest of justice due to his claim having very serious validity.

Plaintiff also can no longer argue the merits of the case or form a defense or produce Exhibits in his own behalf due to the malicious atrocious bias partial prejudice of Lancaster County Prison defendants & they [sic] supervisors & co-workers. (*Tapp v. Proto et al.*, Civil Case No. 07-CV-03725, Order Granting Pl.'s Req. for Appointment of Counsel at 3, May 12, 2009, ECF No. 49.)

Tapp admitted, upon his return to SCI Huntingdon in August 2009, he had access to copies of the documents he alleges Defendants withheld.[12]

The lack of docket activity, combined with Tapp's access to the documentation he required before and after his imprisonment at LCP, establishes the lack of any injury to Tapp's ability to litigate his claims.  The action was held in suspense while Tapp was at LCP and alleged a lack of access to his materials.  Regardless of his inability to litigate his claims while at LCP, Tapp's admission that he had access to copies of the very documents he required while at SCI Huntingdon is fatal to his claim.  Tapp suffered no injury in litigation nor was he prejudiced in his case pending before Judge Brody.  As such, summary judgment in favor of Defendants is appropriate.

---

[12]    Tapp's statement during his deposition reads:

| | |
|---|---|
| [Tapp]: | One thing I would like to clarify for the record. |
| [Counsel]: | Go ahead. |
| [Tapp]: | This right here, Tapp Exhibit One, the packet that you have right here, this are [sic] the documents that were missing that I had in my property that I made copies of before I went to Lancaster County Prison that I sent you that I said I needed to put in on that civil suit against Andy Proto to answer the --- to show when ya'll had moved for a summary judgment, why the summary judgment should have been uphold [sic].  Now, these are the exhibits --- are the things that I was saying was happening that I didn't have no proof [sic] to prove that was happening because I didn't have anything to substantiate or support my allegations.  That's what mainly this is right here in Tapp One. |
| [Counsel]: | Tapp One? |
| [Tapp]: | Right. |
| [Counsel]: | And you had these records here at Huntingdon? |
| [Tapp]: | Right. |

(Tapp Dep. 73:12-74:9.)

***Tapp's Claims based on his Right to Generally Possess Legal Materials while Imprisoned***

Distinct from Tapp's access to courts claim is a claim for a violation of Tapp's First Amendment right to generally possess legal documents while imprisoned.  As the Third Circuit has stated:

> We evaluate prison regulations alleged to violate an inmate's First Amendment right to possess publications and legal materials under the "reasonableness" test set forth in *Turner v. Safley*. First, we assess whether there is a "valid, rational connection" between the prison regulation and the legitimate interest put forth to justify it."  If a rational relationship exists, we consider three other factors: "(1) whether inmates retain alternative means of exercising the circumscribed right ... (2) the burden on prison resources that would be imposed by accommodating the right and (3) whether there are alternatives to the regulation that fully accommodate [ ] the prisoner's rights at *de minimis* cost to valid penological objectives."  However, prison administrators are not required to use the least restrictive means possible to further legitimate penological interests.

*Monroe*, 536 F.3d at 207 (internal citations omitted) (emphasis in original).  Refusal to permit prisoners to have excessive amounts of paper, even legal papers, in their cell has repeatedly been upheld as constitutional under this doctrine.  *Cf. Id.* at 206 (no cause of action under the First Amendment for the confiscation of prisoners' legal material regardless of its status as non-contraband); *see also*, *Snee v. Barone*, 359 Fed.Appx. 281, 284 (3d Cir. 2009) ("we have held that prisoners do not have an unrestricted constitutional right of access to legal materials."); *Atwell v. Lavan*, 557 F. Supp.2d 532, 557 (M.D.Pa. 2008) (dismissing access to courts claim at summary judgment where "[p]laintiff's own evidence shows that he was allowed access to his stored items and could simply request his items stored in the prison ID (property) Room, and in exchange he had to remove a like number of items from his cell and store them in the ID Room.") *aff'd*, 366 Fed.Appx. 393 (3d Cir. 2010).

The Court dismisses this claim in light of the extensive case law upholding prison restrictions on prisoner's paperwork in cells.  Tapp was permitted to keep approximately "six

inches" of his legal work in his cell at all times.  (Pl.'s Resp. to Defs.' Mot. Summ. J. Ex 6 at ¶

3.)  Upon request, Tapp had on-demand access to exchange legal documents in his cell for legal

documents stored in Brazill's office.  (*Id.*)  Though Tapp would have surely preferred his legal

documents to be stored in his property bins, Defendants were not required to choose the least

restrictive means to accomplish their legitimate interests.  *Monroe*, 536 F.3d at 207.   Tapp's

dissatisfaction with having to contact Brazill to exchange his documentation, without more, does

not state a claim under the First Amendment and Defendants are entitled to summary judgment

in their favor.

***Tapp's Special Mail Claims***

Tapp asserts one last violation of his constitutional rights under the First Amendment

stemming from Defendants' opening of his legal mail.[13]  Because the record evidence

demonstrates only a single potential incidence of Tapp's legal mail being opened outside of his

presence, the Court will dismiss this claim.

Prisoners retain a protected right to send and receive mail under the First Amendment.

*Schreane*, 482 Fed.Appx. at 676 (citing *Thornburgh v. Abbot*, 490 U.S. 401 (1989)).  This right

to receive mail is not unrestricted but is informed and limited by the countervailing interests

presented by safe and orderly prison administration.  *Jones v. Brown*, 461 F.3d 353, 360 (3d Cir.

2006).  Even in the context of protected legal mail, the act of opening a single, properly marked

letter does not automatically rise to the level of constitutional violation.  *Schreane*, 482

Fed.Appx. at 676-77; *see also Fortune v. Basemore*, 2008 WL 4525373, at *4 n.4 (W.D.Pa. Sept.

29, 2008) (collecting cases).  In the absence of actual harm or an improper motive, an actionable

---

[13]     To the extent that Tapp complains about the restrictions on his legal mail being stored with Brazill, the Court's analysis is identical to its earlier discussion regarding Tapp's legal paperwork.  The legal mail Tapp was receiving included voluminous legal pleadings and discovery.  Tapp's inability to store his extensive document collection within his cell, regardless of their origin, does not constitute a violation of Tapp's constitutional rights.

violation of a prisoner's constitutional rights occurs only if done as part of a pattern or practice. *Jones*, 461 F.3d at 358-59.

Though Tapp alleges Defendants continuously stored his legal mail in Brazill's office, he has only produced evidence of a single example of any Defendant *opening* his legal mail outside of his presence: Tapp's own July 19, 2009 grievance report.  (Tapp Dep. 75:2-76:1; Defs.' Mot. Summ. J. at Ex. B-Part 3 at 78.)  In this report, Tapp claims that his mail is often opened outside of his presence as LCP, yet Tapp's own testimony under oath contradicts this assertion, indicating that the July 19th occurrence was unique.  Further, Tapp provides no evidence of additional incidents at LCP. (Tapp Dep. 75:2-76:1; Defs.' Mot. Summ. J. at Ex. B-Part 3 at 78.) Outside this single, isolated incident, Tapp has not offered any evidence or testimony as to the existence of a pattern or practice of opening his legal mail.  Tapp has also failed to demonstrate any harm caused by the single incidence of his mail being opened.  Accordingly, summary judgment is appropriate.  *See Schreane*, 482 Fed.Appx. at 677 ("Other than the opening of the letter from the District Court, [plaintiff] has not identified any instances where the defendants mishandled his legal mail. Accordingly, we conclude that the District Court properly granted summary judgment on [plaintiff]'s claim that the defendant improperly opened a letter from the District Court outside his presence.")

***Tapp's Retaliation Claims***

Tapp also brings a §1983 claim for retaliation in violation of the First Amendment.  Such a claim requires plaintiff to show three elements: (1) plaintiff engaged in constitutionally protected conduct; (2) defendant took adverse action against plaintiff sufficient to deter a person of ordinary firmness from exercising his right to speech;[14] and (3) a causal connection existed

---

[14]    The following actions have been found by courts to establish adversity: "several months in disciplinary confinement; denial of parole, financial penalties, and transfer to an institution whose distance made regular

between the protected speech and the adverse action. *Freeman v. Dep't of Corr.*, 447 Fed.Appx. 385, 387-88 (3d Cir. 2011).  Courts must diligently enforce these requirements lest public officials be deterred from legitimate decisions for fear of litigation.  *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).  This diligent enforcement does not create a heightened pleading standard, but merely recognizes that courts "should approach prisoner claims of retaliation with skepticism and particular care due to the near inevitability that prisoners will take exception with the decisions of prison officials and the ease with which claims of retaliation may be fabricated."  *See Alexander v. Forr*, Civil Action No. 3:CV-04-0370, 2006 WL 2796412, at *22 (M.D.Pa. Sept. 27, 2006) (internal citations omitted) (collecting cases), *aff'd*, 297 Fed.Appx. 102 (3d Cir. 2008).

To demonstrate a causal connection, a plaintiff bears the burden of pointing to something in the record beyond his pure speculation. *Iverson v. Leggett*, Civil Action No. 11-1108, 2013 WL 3972621, at *15 (W.D.Pa. July 30, 2013); *see also Brooks v. DiGuglielmo*, Civil Action No. 05-4588, 2008 WL 5187529, at *12 (E.D.Pa. Dec. 9, 2008) ("A plaintiff must come forward with more than general attacks upon the defendants' motivations and must produce affirmative evidence of retaliation from which a jury could find that the plaintiff had carried his burden of proving the requisite motive.") (internal citations omitted).  Plaintiffs can establish a causal link between the protected conduct and the retaliatory action several ways. *Lauren*, 480 F.3d at 267. Temporal proximity between retaliatory action and protected conduct can support a finding of causation if the timing is unusually suggestive. *Id.*  Plaintiffs can also show "a pattern of antagonism coupled with timing to establish a causal link." *Id.*  Finally, causation may be

---

family visits impossible; and placement in administrative segregation that severely limited access to the commissary, library, recreation, and rehabilitative programs." *Dunbar v. Barone*, 487 Fed.Appx. 721, 723 (3d Cir. 2012)

inferred from evidence contained in the entire record. *Id.* (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

Tapp claims Defendant Samasko conspired with Defendants Hersh and Roder to deprive Tapp of his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. (Compl. ¶ 1, 3, and 10.)  More specifically, Tapp claims Defendants Hersh and Roder seized his legal work and took it out of his property bin. (*Id.*)  Tapp also claims Defendant Johnson, who was a juror in Tapp's original 2007 criminal trial, conspired to deprive him of his right to a fair trial. (Compl. ¶ 17.)  Tapp asserts that Defendant Johnson's acts were a part of a larger conspiracy to deprive him of his rights involving LCP officials and Lancaster County Court of Common Pleas. (*Id.*)  Tapp, however, offers no evidence from the record outside of his beliefs on the motives of Defendants.  Indeed, when asked to describe his retaliation claim during his deposition, Tapp provides no chain of facts or motives to ground his theories but simply states:

> I felt all this is being done to me [sic] because I sued them, and their co-workers, probably some of their family members and things of that nature.  So they're going at it tit for tat with me.  But they see I'm not ignorant or stupid or dumb and that I'm not the average person that they're locking up, that I'm a little bit more smarter [sic] . . . So they're just trying to make things on me [sic]--- make things difficult on me physically to see if it would probably take a toll on me mentally.

(Tapp's Dep. at 115:8-115:21.)  In addition to providing no factual grounding for his belief in the existence of a conspiracy besides his own hunches and intuitions, Tapp's allegations as to Defendants' motives are inconsistent.  Tapp alleges in pleadings and in his deposition that defendants are retaliating against him because of his litigiousness.  However, at other points in his filings, Tapp alleges defendants are acting out of racial and religious animosity towards him.[15]  (Pl.'s Resp. to Defs.' Mot. Summ. J. at 14.)

---

[15]   More specifically, Tapp maintained that he faced retaliation "due to the fact that plaintiff is an [A]frican [A]merican [S]ephardic [J]ew who knows how to legally litigate a little bit civilly and criminally, and chose to exercise his right to do so while confined at [L]ancaster [C]ounty [P]rison.  All defendants are [C]aucasian and

Even if the Court were to credit Tapp's contradictory allegations as satisfactorily demonstrating the required causal link, summary judgment in favor of Defendants is still appropriate.  In the context of prisons, even where a plaintiff adequately demonstrates a *prima facie* retaliation claim, the defendants "may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Mearin v. Dohman*, 533 Fed.Appx. 60, 63 (3d Cir. 2013) (quoting *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001)).

Here, Defendants have met their burden.  There is no genuine issue of material fact that Defendants' conduct, restricting the amount of paperwork Tapp could have in his cell at any one time, was related to a valid penological interest.  The fact that Tapp had previously sued some of the Defendants does not change the fact that possession of overwhelming amounts of documents, legal or not, in a jail may cause considerable security and fire hazards*.  See, e.g., Devbrow v. Gallegos*, 735 F.3d at 587 ("To be clear, as a general rule [defendant] officers had a right to confiscate [plaintiff's] legal materials, leaving him a permissible amount in his cell consistent with safety considerations and prison regulations.")  As the Supreme Court has repeatedly reaffirmed, prison officials must be permitted to develop and enforce reasonable policies to find and confiscate contraband in their facilities.  *See, e.g., Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 132 S. Ct. 1510, 1517 (2012).  Prison officials may also designate legal materials as contraband where designation is rationally related to legitimate penological goals. *Monroe v. Beard*, 536 F.3d at 207-208; *see also Florence*, 132 S.Ct. at 1519 (the textbook definition of contraband includes "any item that is possessed in violation of prison rules.").  Regardless of his litigiousness, Tapp is required to follow the rules just like any other prisoner.

---

feel that plaintiff has no rights cause [sic] of his race, creed, color and religion." (Pl.'s Resp. to Defs.' Mot. Summ. J. at 14.)

Tapp fails to provide any evidence or testimony adequately rebutting Defendants' argument that its paperwork overflow procedure was needed for security reasons.  Because Defendants were simply acting to ensure the security and safety of the facility, summary judgment is appropriate and Tapp's retaliation claims will be dismissed.

### B.      The Fourth Amendment

Tapp claims violations of his Fourth Amendment rights stemming from his assertion that Brazill held some of Tapp's legal paperwork and deprived Tapp of legal mail that Tapp refused to sign for, among other complaints. (Compl. ¶¶ 4 and 7.)  The Fourth Amendment guarantees an individual's right to be free from unreasonable searches and seizures, of both person and property, by the government. U.S. Const. amend. IV.  Because the right only protects against *unreasonable* searches seizures, courts have refused to extend the protections of the Fourth Amendment to the context of prison cells.  *Beahm v. Burke*, Civil Action No. 12-01282, 2013 WL 5964018, at *3 (E.D.Pa. Nov. 7, 2013); *Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001).  Accordingly, Tapp cannot demonstrate a violation of his Fourth Amendment rights and summary judgment is appropriate.

### C.      The Fifth Amendment

Tapp asserts violations of his Fifth Amendment claims due to the confiscation of his underwear without a hearing and Brazill's holding of some of his legal documents without a hearing, among other complaints.  (Compl. ¶ 4 and 8.)  The Fifth Amendment bars the United States from depriving an individual of life, liberty, or property without due process of law. U.S. Const. amend. V.  The Due Process Clause of the Fifth Amendment applies only to actions of the

federal government, and has no applicability to the actions of state governments. *Cf. Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (comparing identical application of Fifth Amendment due process analysis for the federal government with Fourteenth Amendment due process analysis for state governments); *see also Bergdoll v. City of York*, 515 Fed.Appx. 165, 170 (3d Cir. 2013); *Tripodi v. N. Coventry Twp.*, 2013 WL 4034372, at *7 n.5 (E.D.Pa. Aug. 8, 2013). To the extent Tapp's Fifth Amendment claims are based upon a violation of due process, those claims are inappropriately brought against Defendants because they were all state actors during the relevant time. (Defs.' Mot. for Summ. J. at 3.)  Tapp's claims here will be dismissed.[16]

### D.      The Sixth Amendment

The Sixth Amendment guarantees the right to have the effective assistance of counsel for one's defense in all criminal prosecutions. U.S. Const. amend. VI.  Like any other constitutional right, the Sixth Amendment rights of prisoners are not unlimited and unrestricted. *Turner*, 482 U.S. at 89; *Riddick v. Baker*, 1997 WL 221133 (E.D.Pa. Apr. 28, 1997) *aff'd sub nom. Riddick v. Potts*, 159 F.3d 1353 (3d Cir. 1998); *Reed v. Trasatti*, Civil Action No. 12-3930 (NLH), 2013 WL 275043 (D.N.J. Jan. 24, 2013).

Tapp states his Sixth Amendment claim as follows:

> By Defendants . . . not allowing Plaintiff to take his active pending legal work with him to his cell. [sic] This deprived Plaintiff of the right to file legal papers, and to seek and meet with lawyers and legal workers.  (2) To get reasonable access to law books, (3) obtain legal help from other prisoners or help other prisoners, and (4 to be free from retaliation based on legal activity.[17]

> Since plaintiff was a pre-trial detainee the 6th Amendment right to counsel protects plaintiff's right to see his attorney...

---

[16]   Though he makes the argument nowhere in his pleadings, to the extent Tapp is alleging a claim under the Fifth Amendment's Takings Clause, the Court finds no merit in such a claim.  Tapp's non-prison issue underwear was clearly contraband (Defs.' Mot. Summ. J. at Ex G at ¶ 21), and Tapp is not entitled to compensation for its confiscation.  *See Tormasi v. Hayman*, 443 Fed.Appx. 742, 745-46 (3d Cir. 2011).

[17]   There was no "(1)" claim noted by Tapp in this section.

(Pl.'s Resp. to Defs.' Mot. Summ. J. at 8.)  Tapp's allegations are simply insufficient to allege a

violation of his rights under the Sixth Amendment.  *See Romero v. Hayman*, CIV.A. 09-1041

KSH, 2011 WL 1344218, at *8-9 (D.N.J. Apr. 8, 2011) *aff'd in part, vacated in part on other

grounds*, 486 Fed.Appx. 981 (3d Cir. 2012) (no Sixth Amendment violation for temporary

confiscation of prisoner's legal paperwork).  As Tapp had a perfectly viable alternative method

for accessing all his documents and preparing his defense, namely exchanging the documents

Tapp possessed for others stored with Brazill, the Court finds no constitutional violation of

Tapp's Sixth Amendment rights. *See Cf. Reed v. Trasatti*, 2013 WL 275043 at *3-4 (Prison

restrictions on telephone conversations did not violate inmate's Sixth Amendment rights where

inmate retained the ability to contact their attorneys through alternatives methods).

    **E.    The Eighth Amendment**

***Tapp's Claims based on a Failure to Protect***

        Tapp next alleges that Defendant Miller violated his Eighth Amendment rights by

alerting other inmates and prison staff that Tapp was infected with MRSA, thereby leaving him

vulnerable to violence by other inmates. (Compl. ¶ 5; Tapp Dep. 63:12-63:24.)  Tapp claims

Miller posted this information in view of other inmates and prison staff in an effort "to get other

inmates riled up to jump me or beat me up, run me off the block, whatever . . . ." (Tapp Dep.

63:20-63:22.)  However, Tapp has not shown that being labeled as having MRSA subjected him

to a substantial risk of serious harm.

        Prison officials have a duty under the Eighth Amendment to protect inmates from

"violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994);

*Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997).  To state such a claim against an official, a

plaintiff must demonstrate that "(1) he is incarcerated under conditions posing a substantial risk

of serious harm; and (2) the prison official acted with deliberate indifference to his health and safety." *Paulino v. Burlington Cnty. Jail*, 438 Fed.Appx. 106, 109 (3d Cir. 2011) (quoting *Farmer*, 511 U.S. at 834).  Inmates need not have actually suffered violence at the hands of other prisoners to state a claim, "[b]ut where an attack has not occurred there must be a pervasive risk of harm from other prisoners." *Day v. Fed. Bureau of Prisons*, 233 Fed.Appx. 132, 134 (3d Cir. 2007) (quoting *Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir. 1985)).  "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror."  *Riley*, 777 F.2d at 147.

Here, Tapp fails to allege that any prisoner took action against him after Miller told others that Tapp had MRSA, or that such action was even likely.  Even if Miller's actions were designed to "entice and incite other pre-trial detainees to physically harm plaintiff," Tapp has failed to demonstrate that Miller's actions were likely to create a perilous environment. (Pl.'s Resp. to Defs.' Mot. Summ. J. at 17.)  Though other inmates saw Miller's note, Tapp offers no evidence that those inmates actually treated him differently or threatened him as a result of the note. (Tapp Dep. 68:20-69:3.)  There is nothing in the record that shows that other inmates at LCP generally harm or threaten MRSA-positive inmates.  Because Tapp provides no evidence that Miller's actions created a "substantial risk of serious harm," summary judgment is appropriate.

### Tapp's Clothing Claims under the Eighth and Fourteenth Amendments

Tapp makes identical Eighth Amendment allegations against LCP officials in this case as he did in his previous civil suit: that he was forced to wear used, prison-issue clothing.  (Pl.'s Resp. to Defs.' Mot. Summ. J. at 21.)  Though Tapp's claims are not legally precluded, there has

been no intervening change in the law and the Court sees no reason to disagree with Judge

Brody's comprehensive analysis on this issue. *Tapp v. Proto*, 718 F. Supp. 2d at 619.

Tapp was not forced to wear unlaundered clothing. (Defs.' Mot. Summ. J. at Ex. G at

¶¶ 3-6.)  LCP officials provided Tapp with regularly laundered clothing, including underwear.

(*Id.*)  Tapp's concern that LCP-issued underwear was used simply does not rise to the level of a

constitutional violation under the Eighth or Fourteenth Amendments. *See Young v. Berks Cnty.*

*Prison,* 940 F.Supp. 121, 124 (E.D.Pa. 1996) (finding that an inmate who had been "forced to

wear ill-fitting, dirty, or torn clothes . . . [that] no doubt caused him substantial inconvenience

and discomfort," had not raised an issue of constitutional import); *Tapp*, 718 F. Supp. 2d at 619

("Tapp testified that the clothes he had been given were used and had been worn by another man.

. . . It is clear that under an Eighth Amendment analysis these allegations do not rise to the level

of a constitutional violation.").

On any remaining claims relating to Tapp's conditions of confinement, the Court

addresses them under Fourteenth Amendment analysis due to Tapp's status as a pre-trial

detainee.[18] *See Bistrian v. Levi*, 696 F.3d 352, 372-74 (3d Cir.2012); *Bell v. Wolfish*, 441 U.S.

520, 528 (1979).

---

[18]   Pretrial detainees under the Fourteenth Amendment are "entitled at a minimum, to no less protection than a sentenced inmate is entitled to under the Eighth Amendment." *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000) (internal quotation marks omitted).  "Accordingly, courts analyzing § 1983 cases brought by pretrial detainees apply the same standard of deliberate indifference as is applied is Eighth Amendment cases." *Santos v. Delaney*, CIV.A. 09-3437, 2014 WL 199799, at *5 (E.D.Pa. Jan. 17, 2014).

F.       **The Fourteenth Amendment**[19]

Under the Due Process Clause of the Fourteenth Amendment, a State may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  Though pretrial detainees are protected from punishment without due process of law under the Fourteenth Amendment, they pose no less of a security risk within prisons than convicted inmates.  *Bell*, 441 U.S. at 546 n.28.  The very fact of their confinement within a prison requires the rights of pretrial detainees to be limited by legitimate penological goals. *Id.* at 545-46; *see also Florence v. Board of Chosen Freeholders of Cnty. of Burlington*, 132 S.Ct. 1510, 1515 (2012) ("Maintaining safety and order at [county jails] requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face.").

In this Circuit, courts follow a two-step analysis of claims under the Due Process Clause. *Renchenski v. Williams*, 622 F.3d 315, 325 (3d Cir. 2010).  First a court must identify if a plaintiff has an interest that is protected under the Due Process Clause. *Id.*  If a plaintiff has identified such a protected interest, the court must determine whether or not the procedures employed by the defendants afforded plaintiff sufficient due process of law. *Id.*  Additionally, where a county or local governing body violates a plaintiff's rights under the Due Process Clause, liability will only attach if the denial is attributable to the governing body. *Id.* at 237-38; *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 691 (1978).  Plaintiff must

---

[19]   Tapp has not expressly pled an equal protection claim.  However, to the extent Tapp's pleadings can be interpreted to make such a claim, it is without merit.  Plaintiffs alleging an equal protection claim show that the defendant's actions: (1) had a discriminatory effect; and (2) were motivated by a discriminatory purpose. *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265 (1977).  Outside of his own unsupported statements, Tapp has not demonstrated any Defendant was motivated by a discriminatory purpose. Accordingly, any equal protection claim would be meritless.  *See Tapp v. Proto*, 404 Fed.Appx. at 568 (citing *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 197 (3d Cir. 2009)).

demonstrate the deprivation of his or her rights resulted from the informal custom or adopted policy of the local governing body. *Mulholland*, 706 F.3d at 238.

**Tapp's Claims based on Procedural Due Process**

Due process does not require rigid application and the process due must conform to the situation. *U.S. v. Delker*, 757 F.2d 1390, 1397 (3d Cir. 1985).  A proper determination of the specific process due to a particular plaintiff requires the balancing of several factors. *Mulholland*, 706 F.3d at 238; *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).  A court must consider the private interest at issue, the risk that the procedures used will cause an erroneous deprivation of the interest, the value of alternative procedures, and the governmental interest at issue. *Mulholland*, 706 F.3d at 238.  Furthermore, where adequate post-deprivation remedies are available to prisoners, the requirement of procedural due process is met. *See Hudson*, 468 U.S. at 533; *Monroe*, 536 F.3d at 210.  Pre-deprivation notice is not constitutionally required. *Monroe*, 536 F.3d at 210 ("Because prisons are constitutionally required to afford inmates only a post-deprivation remedy, we agree that the defendants' failure to give the inmates prior notice of their intended seizure of their materials notice did not violate the plaintiffs' Due Process rights.").

The Court finds that regardless of any protected property or liberty interest Tapp might have possessed in his papers and underwear,[20] Defendants have provided him with sufficient process so as to not violate Tapp's constitutional rights.  Tapp had two adequate remedies available to him.  First, Tapp could have filed an administrative grievance against defendants, which it appears he did, unsuccessfully. (Defs.' Mot. for Summ. J. at Ex. B.) *See also Crosby v.*

---

[20]    It is not clear that Tapp has a protected property interest in the underwear Defendants confiscated. Tapp's underwear was contraband. Accordingly, Tapp has no legitimate property interest in the contraband while confined at LCP. *See, generally, Dantzler v. Beard*, Civil Action No. 09-275, 2010 WL 1008294, at *10-11 (W.D.Pa. Mar. 15, 2010) (collecting cases); *Freeman v. Dep't of Corr.*, Civil No. 3:CV-07-2191, 2011 WL 1304830, at *3-4 (M.D.Pa. Mar. 31, 2011) *aff'd*, 447 Fed.Appx. 385 (3d Cir. 2011).

*Piazza*, 465 Fed.Appx. 168, 172 (3d Cir. 2012) (citing *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000)).  However, Tapp had a second adequate remedy he did not utilize: a state court tort action.  *Id.* (citing *Hudson*, 468 U.S. at 535).  Regardless of Tapp's dissatisfaction with LCP officials or their grievance policies, the alternative remedy available to Tapp demonstrates that he was not deprived of his property without due process of law.  *See Dockery v. Beard*, 509 Fed.Appx. 107, 113 (3d Cir. 2013).

### *Tapp's Claims based on Substantive Due Process*

The Fourteenth Amendment's guarantee of due process of law has been interpreted to include a concept known as substantive due process.  *See, e.g., Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998) (collecting cases); *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 579 (3d Cir. 2004).  Substantive due process may protect against governmental actions that "shock the conscience," or otherwise interfere with "rights implicit in the concept of ordered liberty." *See Cnty. of Sacramento*, 523 U.S. at 845-46.

The Supreme Court has held that a substantive due process claim is inappropriate where the rights violated flow from a more specific constitutional provision.  *Berg*, 219 F.3d at 268-69; *see also Graham v. Connor*, 490 U.S. 386, 394 (1989).  On the factual record before this Court, Tapp's substantive due process claims appear entirely duplicative of his other claims. Because specific constitutional provisions expressly provide the rubric under which Tapp's claims must be analyzed, due process analysis is inappropriate. *See United States v. Lanier*, 520 U.S. 259, 272, n.7 (1997).

Tapp's substantive due process claims revolve around the confiscation of some of his legal papers and personal items upon his appearance at LCP and the effect this confiscation had on his access to the courts. (Pl.'s Res. to Defs.' Mot. Summ. J. at 7-8.)   As Tapp describes his

claim in his reply to Defendants' Motion for Summary Judgment, "[p]laintiff's substantive due process was violated when the defendant's actions interfered with and violated his constitutionally protected rights such as access to the courts. . . . Plaintiff served 7½ months without his legal work properly pertaining to immediate active legal pending cases which were criminal and the other civil." (*Id.*)  Because Tapp's substantive due process claims are entirely duplicative of his other constitutional claims, summary judgment is appropriate.

Even if the Court were to reach Tapp's allegations under substantive due process, the conduct he alleges does not shock the conscience.  *See Booth v. King*, 346 F.Supp.2d 751, 760 (E.D.Pa. 2004) ("The behavior alleged by [plaintiff]—the mail tampering, restriction of law library use, verbal abuse, and confiscation of property and medication—does not rise to the level of conscience-shocking behavior and therefore [plaintiff's] substantive due process claim is without merit.")  The confiscation of Tapp's documents and personal effects simply cannot serve as the basis of a due process violation.

***Tapp's Claims based on Conditions of Confinement***

Pretrial detainees challenging the conditions of their confinement do so under the Due Process Clause of the Fourteenth Amendment.  *Hubbard v. Taylor*, 538 F.3d 229, 231 (3d Cir. 2008); *Bell*, 441 U.S. at 535 n.16.  The proper inquiry for courts is whether the conditions imposed upon the detainee amount to punishment. *Bell*, 441 U.S. at 535.  "In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "Unconstitutional punishment typically includes both objective and subjective components. . . . [T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable

state of mind." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294 (1991)).  "Conditions that are reasonably related to a penal institution's interest in maintaining jail security typically pass constitutional muster." *Bistrian*, 696 F.3d at 373 (citing *Bell*, 441 U.S. at 540); *see also Fuentes v. Wagner*, 206 F.3d 335, 342 (3d Cir. 2000) ("Consequently, whether . . . restrictions and practices constitute punishment in the constitutional sense depends on whether they are rationally related to a legitimate nonpunitive government purpose and whether they appear excessive in relation to that purpose.") (citations omitted).

Tapp has alleged that he was forced to shower in handcuffs while in administrative segregation. (Pl.'s Resp. to Defs.' Mot. Summ. J. at 20).  The use of restraints while showering, without further claims of harm, does not evince unconstitutional punishment for the purposes of due process analysis. *Sanders v. Hopkins*, 131 F.3d 152, 1997 WL 755276, *2 (10th Cir. 1997) (unpublished) ("The condition or restriction of requiring a pretrial detainee in disciplinary segregation to wear restraints while showering is reasonably related to the legitimate governmental objective of promoting security in the detention facility. Thus, under *Bell*, it does not amount to a "punishment" which would violate the detainee's due process rights.").  Courts have also repeatedly found similar practices constitutional under Eighth Amendment analysis. *See, e.g., Lopez-Diaz v. Cnty. of Lancaster*, 2003 WL 1592001, at *3 (E.D.Pa. Mar. 26, 2003) (collecting cases).  Because showering in handcuffs is not unconstitutional punishment, summary judgment is appropriate.

Tapp also alleges Defendants violated his constitutional rights by not providing him with at least one hour of recreation every twenty-four hours.  (Pl.'s Resp. to Defs.' Mot. Summ. J.at 21-22; Compl. ¶ 15.)  "Meaningful recreation is extremely important to the psychological and physical well-being of the inmates." *Peterkin v. Jeffes*, 855 F.2d 1021, 1031 (3d Cir. 1988)

(citations omitted). To allege a constitutional violation, "a plaintiff must demonstrate that such a denial is sufficiently serious to deprive inmates of the minimal civilized measure of life's necessities. Even minimal provision of time for exercise and recreation may satisfy constitutional requirements." *Gattis v. Phelps*, 344 Fed.Appx. 801, 805 (3d Cir. 2009).

Here, Tapp does not complain about the amount of recreation he is receiving, but rather the timing of that recreation. Tapp asserts the normal recreation schedule permitted exercise from 12:45 P.M. until 2:45 P.M. on day one, and not again until 6:45 P.M. the next day. (Pl.'s Resp. to Defs.' Mot. Summ. J. at 22.) Plaintiff's alleged harm – that he did not receive at least one hour of recreation in a given twenty-four hour period – is simply insufficient to demonstrate harm to his psychological and physical well-being. *Cf. Tapp v. Proto*, 718 F. Supp. 2d at 620 (no constitutional violation for prison policy of allowing detainee to exercise only five out of seven days per week because the policy "fails to constitute a significant threat to his well being," and "also fails to amount to punishment under the Fourteenth Amendment.") Accordingly, Tapp's recreation claims are entirely without merit and cannot survive summary judgment.

### G.   Conspiracy

Plaintiff has generally alleged a conspiracy between and amongst the Defendants to deprive him of his constitutional rights.[21] Tapp alleges conspiracies under both 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3). (Pl.'s Resp. to Defs.' Mot. Summ. J. at 14.) Because Tapp offers

---

[21]   At his deposition, Tapp elaborated on the substance of his conspiratorial allegations. When asked about his conspiracy claims, Tapp replied:

> This is how the conspiracy works. Lancaster County Prison, one, they feed you horrible. Two, they stick you in a cell with any inmates. Three, they deprive you of recreation. Four, they break you down mentally and physically so you do not want to be there any longer than you have to. Now, where the Court of Common Pleas come in at, even though you have a chance of beating your case or even if you're a hundred percent honest in your case, you're ready to make a deal to get out of there as soon as possible just so you can be out of there and over and done with the situation so you don't have to deal with Lancaster County Prison again.

(Tapp Dep. 60:23-61:13.)

nothing except "ambiguous allegations and vague inferences," he "cannot defeat summary judgment" on his conspiracy claims. *Tapp v. Proto*, 404 Fed.Appx. at 568 (quoting *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999)).

### *Conspiracy under 42 U.S.C. § 1983*

Plaintiffs alleging a conspiracy under 42 U.S.C. § 1983 must sufficiently allege: "(1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Muhammed v. Pawlowski*, Civil Action No. 11-5004, 2012 WL 748411, at *4 (E.D.Pa. Mar. 7, 2012) (citations omitted). Fatal to Tapp's § 1983 conspiracy claim is the fact that he has not demonstrated that he was deprived of any civil right.  *Startzell v. City of Philadelphia*, Civil Action No. 05-05287, 2007 WL 172400, at *17 (E.D.Pa. Jan. 18, 2007) ('Startzell II') (the failure to demonstrate an underlying violation of a plaintiff's civil rights "removes the basis for a Section 1983 conspiracy claim.") *aff'd sub nom. Startzell v. City of Philadelphia, Pennsylvania*, 533 F.3d 183 (3d Cir. 2008) ('Startzell III'). Accordingly, summary judgment is granted in Defendants' favor as to Tapp's § 1983 conspiracy claims.

### *Conspiracy under 42 U.S.C. § 1985(3)*

To state a claim under § 1985(3) a plaintiff must allege four distinct elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (citations omitted).

To allege a conspiracy, a plaintiff must demonstrate, with some degree of specificity, a mutual understanding or agreement among conspirators to take unconstitutional actions against him. *See Startzell v. City of Philadelphia*, No. Civ.A. 05-05287, 2006 WL 1479809, at *3 (E.D.Pa. May 26, 2006) ('Startzell I').  A plaintiff is also required to allege, again with specificity, that the conspirators planned to carry out specific actions in furtherance of their planned unconstitutional ends. *Id.*  Ultimately, to allege a conspiracy there must always be a meeting of the minds inferable from the evidence put forth by plaintiff.  *Startzell III*, 533 F.3d at 205 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).  As such, whether a conspiracy exists is typically a matter for the factfinder.  *Startzell II*, 2007 WL 172400 at *17. However, summary judgment is appropriate where there is insufficient evidence, direct or circumstantial, to show the conspirators formed a mutual understanding to deprive the plaintiff of his or her civil rights.  *Id.*

Outside of his own conclusory statements, Tapp has failed to present any evidence, direct or circumstantial, of an agreement between and amongst Defendants to do anything, let alone anything illegal.  "[A]llegations of conspiracy must be grounded firmly in facts; they cannot be conclusory nor can they hinge on bare suspicions and foundationless speculation." *Reed v. Harpster*, 506 Fed.Appx. 109, 111 (3d Cir. 2012) (citing *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991)); *see also Brown v. Deparlos*, 492 Fed.Appx. 211, 215 (3d Cir. 2012) ("[T]he bare allegation of an agreement is insufficient to sustain a conspiracy.").  Because Tapp offers no facts to support the existence of a conspiracy, summary judgment is appropriate.

36

H.      Remaining Claims

*Monell Claims*

Underlying many of Tapp's constitutional claims is the allegation that he was deprived of his rights as a result of LCP custom or policy.  (Compl. ¶ 15-16.)  Though the Court has already determined that Tapp has not showed he was actually deprived of any constitutional right, Tapp has also failed to demonstrate that LCP custom or policy acted to deprive him of his rights.

Local governing bodies are not liable under §1983 for the unconstitutional actions of their agents under a theory of *respondeat superior. Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 691 (1978).  Instead, a plaintiff must demonstrate that he has been deprived of his constitutional rights because of a local policy or custom.  *Berg v. County of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000) (citing *Monell*,436 U.S. at 691).  A plaintiff must identify the policy or custom to ensure that a municipality is held responsible only for actions fairly attributable to it.  *Bd. of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403-04 (1997); *Berg*, 219 F.3d at 275.  The existence of a local custom or policy may be inferred from the facts pled in a complaint or found through discovery. *See Berg*, 219 F.3d at 276.

Municipal policy emanates from the policy decisions of either a legislative body or municipal officials given final decision-making authority. *B.S. v. Somerset County*, 704 F.3d 250, 274 (3d Cir. 2013) (citing *Bd. of County Com'rs of Bryan County, Okl.*, 520 U.S. at 40-404). Conversely, Municipal customs are widespread practices that have not been formally approved by policy-makers, but nevertheless have the force of law within the municipality. *B.S.*, 704 F.3d at 274 (citing *Bd. of County Com'rs of Bryan County, Okl.*, 520 U.S. at 403-04).

Tapp makes only vague and conclusory assertions as to the existence of a custom or policy of LCP.  Nowhere in the record does Tapp identify a specific policy or custom of LCP.

Nowhere in the record has Tapp established that a policy or custom deprived him of any constitutional right.  Accordingly, summary judgment is appropriate.  *See Santos v. Sec'y of D.H.S.*, Civil Action No. 10-7266, 2012 WL 2997036, at *14 (E.D.Pa. July 23, 2012) (dismissal is appropriate where "[p]laintiffs fail to allege a particular policy, custom, or practice of [defendant] that caused a constitutional violation.") *aff'd*, 532 Fed.Appx. 29 (3d Cir. 2013).

        a)     <u>Defendant Johnson</u>

Tapp claims that Defendant Johnson conspired to retaliate against him, denied him access to the courts, violated his rights under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments by serving as a juror for Tapp's original 2007 criminal trial.  (Compl. ¶ 17; Pl.'s Resp. to Defs.' Mot. Summ. J. at 22.)  To the extent that Tapp alleges Johnson was part of a conspiracy, the Court has already found that Tapp's allegations have no factual or evidentiary grounding.  To the extent that Tapp alleges that Johnson deprived him of a constitutional right when serving on the jury, Johnson was not acting under color of state law when he served on the jury.  *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) ("Action under color of state law requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.").

        2.     <u>Defendant Cannefield</u>

Tapp has agreed to drop Cannefield from this case.  (Pl.'s Resp. to Defs.' Mot. Summ. J. at 17.)  Accordingly, the Court will dismiss all claims against Cannefield, with prejudice.

**V.      Conclusion**

For the reasons more fully set forth above, the Court will grant Defendants' Motion for Summary Judgment and deny Tapp's Cross-Motion for Summary Judgment.  An appropriate order follows.